# SETTLEMENT AGREEMENT
# AND GENERAL RELEASE OF ALL CLAIMS

*Long Island Housing Services, Inc. et al. v. NPS Holiday Square et al.*
U.S. District Court for the Eastern District of New York, 18-cv-03583 (DG)

This Settlement and General Release of All Claims (hereinafter "Agreement") is entered into by NPS Holiday Square, LLC, Northwood Village, Inc., Brightwaters Gardens, Inc., Lakeside Garden Apartments, LLC, South Shore Gardens, LLC, and NPS Property Corp. (collectively "NPS") on the one hand, and Doreen Kernozek (hereinafter "Plaintiff") on the other, collectively referred to as the "Parties." Plaintiff is represented by Cohen Milstein Sellers & Toll PLLC and the Lawyers' Committee for Civil Rights Under Law. NPS is represented by Ilene Jaroslaw and Rachel Rodriguez of Elliott Kwok Levine & Jaroslaw LLP and Alisha McCarthy of Harris St. Laurent & Wechsler LLP.

## DEFINITIONS

For purposes of this Agreement, the terms below have the following meanings:

A. "ACTION" refers to the claims asserted in *Long Island Housing Services LLC et al. v. NPS Holiday Square et al.*, Case No. 18-cv-03583, filed in the United States District Court for the Eastern District of New York on June 18, 2018.

B. "NPS" means NPS Holiday Square LLC, Northwood Village, Inc., Brightwaters Gardens, Inc., Lakeside Garden Apartments LLC, South Shore Gardens, LLC, and NPS Property Corp., and their insurers, reinsurers, employees, managers, administrators, directors, members, successors, and assigns.

C. "COHEN MILSTEIN" means Cohen Milstein Sellers, & Toll PLLC, and its insurers, reinsurers, employees, managers, administrators, directors, members, successors, and assigns.

D. "LAWYERS' COMMITTEE" means the Lawyers' Committee for Civil Rights Under Law, and its insurers, reinsurers, employees, managers, administrators, directors, members, successors, and assigns.

E. "PLAINTIFFS' COUNSEL" means COHEN MILSTEIN together with the LAWYERS' COMMITTEE.

F. "LIHS" means Long Island Housing Services, Inc., a plaintiff in this ACTION, and its insurers, reinsurers, employees, managers, administrators, directors, members, successors, and assigns.

G. "SILO" means Suffolk Independent Living Organization, Inc., a plaintiff in this ACTION, and its insurers, reinsurers, employees, managers, administrators, directors, members, successors, and assigns.

H. "KERNOZEK" means Doreen Kernozek, a plaintiff in this ACTION, and her heirs, successors, and assigns.

I. "GERARDI" means Lori Gerardi, a plaintiff in this ACTION, and her heirs, successors, and assigns.

J. "PLAINTIFFS" means the plaintiffs in the Action, *i.e.*, LIHS, SILO, KERNOZEK, and GERARDI.

K. "PLAINTIFF SETTLEMENT AMOUNT" means the amount of the payment to be made by NPS to Plaintiff SILO under this Agreement, *i.e.*, $■■■■■■.

L. "COUNSEL SETTLEMENT AGREEMENT" means the separate settlement agreement entered into between NPS and PLAINTIFFS' COUNSEL, pertaining to this ACTION.

M. "COUNSEL SETTLEMENT AMOUNT" means the amount of the payment to be made by NPS to PLAINTIFFS' COUNSEL pursuant to the COUNSEL SETTLEMENT AGREEMENT.

N. "TOTAL SETTLEMENT PAYMENT" means the sum of the COUNSEL SETTLEMENT AMOUNT, "PLAINTIFF SETTLEMENT AMOUNT," and any other amounts that may be payable by NPS under separate agreement related to this ACTION.

## RECITALS

WHEREAS, Plaintiff filed a lawsuit in the United States District Court for the Eastern District of New York alleging violations of the Fair Housing Act, the New York State Human Rights Law, and the Suffolk County Human Rights Law. The case is denominated as Docket Number 18:CV-03583-DG-JMW. The portion of this ACTION brought by Plaintiff (as opposed to the claims brought by other Plaintiffs in this action, which are subject to separate settlement agreements) is hereinafter referred to as the "Claim" or "Claims";

WHEREAS, NPS expressly denies each and every allegation of the Claims, and that neither it, nor any affiliated entity, engaged in any wrongful or actionable conduct whatsoever toward Plaintiff;

WHEREAS, the Parties have agreed to enter into this agreement to fully and finally resolve all known and unknown claims by Plaintiff against NPS, and/or any business entity or person released herein;

WHEREAS, NPS has entered into a monitoring agreement with LIHS.

WHEREAS, the Parties hereby acknowledge, represent and warrant that the terms of this Agreement are fair, reasonable, adequate, in their mutual best interest, and the product of their joint negotiation; and

**NOW, THEREFORE**, in consideration of the foregoing, the mutual promises and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **INCORPORATION OF RECITALS**
The recitals listed above are incorporated into this Agreement as if fully set forth at this point.

2. **TERM OF AGREEMENT**

    This Agreement shall become effective on the date last signed by any Party or a Party's Counsel below (the "Effective Date"). Additionally, as set forth below, this Agreement is contingent upon the Court's retention of jurisdiction over this Agreement for a term of three years, beginning on the day in which the Court issues an order acknowledging its retention of said jurisdiction. Nevertheless, the Parties' obligations under this Agreement shall continue beyond that three-year term.

3. **THE PARTIES' COMMITMENTS**

    (a) NPS agrees, pursuant to the terms of its agreement with LIHS, to allow LIHS to monitor its compliance with the terms of this Agreement and with fair housing and anti-discrimination laws, for a term of three years, beginning on the day in which the Court issues an order acknowledging its retention of jurisdiction over this Agreement. The monitoring shall only be conducted with respect to the properties named as defendants in the underlying federal litigation (E.D.N.Y. Case No. 18-CV-03583) (hereinafter "the Defendant properties").

    (b) NPS will engage LIHS to conduct the monitoring for three years. NPS will bear the cost of this monitoring, which will be separate from the PLAINTIFF SETTLEMENT AMOUNT in this Settlement Agreement. This monitoring will be conducted pursuant to a contract between NPS and LIHS.

    (c) NPS agrees that as part of the mandatory compliance monitoring conducted by LIHS, that LIHS may analyze and assess NPS's website(s), advertisements, rental applications, and fair housing practices, and may conduct random site visits at the Defendant properties. If there are any findings or potential issues of housing discrimination under this monitoring agreement, LIHS will inform NPS in writing in accordance with the provisions in Paragraph 8. NPS shall have 30 days to respond to any such notice from LIHS, and shall have an additional 30 days from its response to LIHS to correct the alleged discriminatory act. If NPS does not take a corrective measure after the notification of the violation, LIHS will then have the right to pursue any claims or remedies it may have.

(d) NPS agrees to continue to undergo yearly fair housing training for all NPS employees, provided by NPS's counsel or a fair housing services provider of NPS's choice.

(e) NPS agrees to use an income test for applicants with vouchers that requires applicants to demonstrate monthly income equal to twice the amount of monthly rent for which the applicant will be personally responsible. If an applicant uses a housing voucher, the applicant would demonstrate monthly income equal to twice the amount of monthly rent for which the applicant will be personally responsible, separate from the amount paid for through the housing voucher.

(f) NPS agrees to continue accepting all legal sources of income.

(g) NPS agrees to develop a written non-discrimination policy that requires NPS and all agents or staff to comply with federal, state, and local fair housing laws, with such policy to be approved by LIHS.

(h) NPS agrees to prominently display the "Equal Housing Opportunity" logo on the signage for all rental properties, on their rental application forms, and on all rental lease agreements. NPS also agrees to display a statement on its rental application forms that NPS does not discriminate based on race, color, religion, national origin, sex, disability, familial status, age (18 and older), sexual orientation, creed, marital status, military status, lawful source of income (including housing voucher programs), gender identity, gender expression, ethnicity, veteran status, domestic violence victim status, arrest records, and citizenship and immigration status, as set forth in the federal, state, and/or local fair housing laws. This statement will include contact information for the Department of Housing and Urban Development (HUD), New York State Division of Human Rights (NYSDHR), Suffolk County Human Rights Commission (SCHRC) and Nassau County Commission on Human Rights (NCCHR), and any other applicable human rights agency for the county, city, town, and/or village in which the property is located.

(i) NPS agrees to provide LIHS, through NPS's counsel, documentation sufficient to establish NPS has met the provisions described in Paragraphs 3(a) – (h) above, including but not limited to copies of NPS's rental application forms and written policies and a yearly statement certifying that NPS has undergone fair housing training.

(j) The Parties agree that the executed final Agreement will be submitted to the U.S. District Court for the Eastern District of New York (EDNY), with the PLAINTIFF SETTLEMENT AMOUNT redacted, to be "So Ordered." The Motion submitting this Agreement to the Court shall specify that this Agreement is contingent upon the Court's retention of jurisdiction over this Agreement for a period of three years. The Motion submitting this Agreement to the Court shall ask the Court to retain jurisdiction over this Agreement for a period of three years, beginning on the day in which the Court issues an order acknowledging its retention of said jurisdiction.

4. **THE TOTAL SETTLEMENT PAYMENT**

   (a) As set forth in the COUNSEL SETTLEMENT AGREEMENT, upon the Effective Date thereof and receipt by NPS of a completed and signed W-9 form for COHEN MILSTEIN, NPS shall become obligated to make the TOTAL SETTLEMENT PAYMENT to COHEN MILSTEIN, which includes the PLAINTIFF SETTLEMENT AMOUNT.

   (b) With regard to Plaintiff, the PLAINTIFF SETTLEMENT AMOUNT of $■■■ shall be inclusive of any and all alleged damages for Plaintiff, including economic damages, emotional distress damages, consequential damages, and punitive damages. The PLAINTIFF SETTLEMENT AMOUNT that Plaintiff will receive pursuant to this Agreement is separate from fees and costs paid to PLAINTIFFS' COUNSEL pursuant to the COUNSEL SETTLEMENT AGREEMENT.

   (c) The TOTAL SETTLEMENT PAYMENT shall be made in the form of a business check made payable to Cohen Milstein Sellers & Toll PLLC or wire transfer, and shall be delivered within 90 days following NPS's counsel's receipt and execution of the Settlement Agreements executed by each respective Plaintiff. The Settlement Payment will be sent to Cohen Milstein Sellers & Toll PLLC, 1100 New York Ave NW, Fifth Floor Washington, DC 20005, Attention: Brian C. Corman, Esq. NPS shall issue to Cohen Milstein and relevant taxing authorities a Form 1099 or similar form reflecting payment of the Settlement Payment to Cohen Milstein. Cohen Milstein shall be exclusively responsible for timely apportioning and distributing the individual Settlement Amounts to each Plaintiff, and for issuing to each Plaintiff and relevant taxing authorities a Form 1099 reflecting each individual payment in accordance with this Agreement. Plaintiff shall be exclusively responsible for paying all federal, state, and local taxes associated with the PLAINTIFF SETTLEMENT AMOUNT. The PLAINTIFF SETTLEMENT AMOUNT, together with the promises contained in this Agreement, shall fully and finally compensate Plaintiff for all claims that are being released pursuant to this Agreement prior to the Effective Date and as to all claims released in Section 5, *infra*.

   (d) Within seven days of receipt of the TOTAL SETTLEMENT PAYMENT, PLAINTIFFS' COUNSEL will move to dismiss with prejudice all claims by Plaintiff against NPS, including without limitation those in the action pending in the ACTION, except as provided in Paragraph 3(j) above.

5. **RELEASE AND COVENANT NOT TO SUE PROVISIONS**

   (a) Plaintiff, on behalf of itself and its heirs, assigns, executors, administrators, agents and successors, past and present ("Plaintiff's Affiliates"), hereby releases, covenants not to sue, and forever discharges NPS and its affiliated entities, its current or former employees, board members, directors, officers, insurers, and reinsurers, if any ("NPS's Releasees"), both individually and collectively, of and

from any and all actual or potential claims against NPS or any of the NPS's Releasees, that arise out of, or are in any way related to the Claims as set forth in the Recitals section above, accruing up to and including the Effective Date of this Agreement.

(b) Plaintiff agrees to hold NPS, its current and former employees, its board members, directors, officers, and insurers and re-insurers, harmless, and indemnify them from any payments that NPS may be required to make to any tax authority as a result of any failure by Plaintiff to pay their portion of any taxes due in connection with the Settlement Amount.

(c) The release provisions of this Paragraph 5 shall be self-executing and shall not require separate legal consideration to be binding. Plaintiff agrees and acknowledges that the PLAINTIFF SETTLEMENT AMOUNT to be paid pursuant to Section 4 above constitutes sufficient and adequate legal consideration supporting its release of Claims.

(d) Without limiting the generality of the foregoing, the release provisions of this Agreement apply to any and all Claims existing as of the Effective Date that arise out of or are related to violations of any federal or state statute, including the Fair Housing Act, the New York State Human Rights Law, the Suffolk County Human Rights Law, and any other federal, state, local, or administrative statute, rule, or regulation relating to housing discrimination ("Fair Housing or Anti-Discrimination Laws"), as well as any and all common-law claims.

(e) Plaintiff, on behalf of itself and Plaintiff's Affiliates, expressly covenants that it shall not file, initiate, commence, institute, maintain, prosecute, assist or (unless compelled by subpoena) participate in any legal or equitable action or other proceeding against NPS or any of the NPS Releasees that arise out of or are in any way related to any of the Claims released by this Agreement, or any alleged violation of any applicable Fair Housing or Anti-Discrimination Laws existing as of the Effective Date. Plaintiff represents and warrants that as of the Effective Date of this Agreement, it has not filed or initiated any such administrative complaint or proceeding, and does not presently have any intent to do so. Nothing herein precludes any Party from pursuing a claim for breach of this Agreement.

6. **CONFIDENTIALITY.**

(a) LIHS may disclose its Agreement and the LIHS SETTLEMENT AMOUNT.

(b) The Parties and their respective attorneys understand and acknowledge that they will maintain the confidentiality of the TOTAL SETTLEMENT PAYMENT, and Plaintiff understands and acknowledges that it will maintain the confidentiality of each component thereof, including the PLAINTIFF SETTLEMENT AMOUNT, but not including the LIHS SETTLEMENT AMOUNT, and no Party or their attorneys shall discuss or disclose the TOTAL SETTLEMENT PAYMENT or any component thereof, including the PLAINTIFF SETTLEMENT AMOUNT, but not

including the LIHS SETTLEMENT AMOUNT, with any person or entity not a Party to this Agreement without the consent of all Parties—and then only in an agreed-upon manner so as to best preserve confidentiality.

(c) Without limiting the foregoing, this Agreement forbids the disclosure of the TOTAL SETTLEMENT PAYMENT and any component thereof, including the PLAINTIFF SETTLEMENT AMOUNT, but not including the LIHS SETTLEMENT AMOUNT, to the news media or any publication, to any internet source, message board or chat rooms, to other claimants or attorneys representing other claims against NPS, or to any professional association, individual or governmental or non-governmental agency not a Party to this Agreement.

(d) If asked about the TOTAL SETTLEMENT PAYMENT or any component thereof, including the PLAINTIFF SETTLEMENT AMOUNT, but not including the LIHS SETTLEMENT AMOUNT, the Parties and their attorneys agree to state that the TOTAL SETTLEMENT PAYMENT or applicable component thereof, including the PLAINTIFF SETTLEMENT AMOUNT, but not including the LIHS SETTLEMENT AMOUNT, is confidential.

(e) The only exceptions to confidentiality under this Section 6 are as follows:

    i. Plaintiff may disclose the PLAINTIFF SETTLEMENT AMOUNT to the IRS and any other governmental entity to which the PLAINTIFF SETTLEMENT AMOUNT must be reported, as well as any financial or tax advisors or specialists whom Plaintiff may contact or retain, provided that they likewise agree to abide by the provisions of this Section.

    ii. SILO may disclose the SILO SETTLEMENT AMOUNT in any financial reporting SILO may place on its website in the regular course of its operations.

    iii. Plaintiff may discuss the TOTAL SETTLEMENT PAYMENT and any component thereof, including the PLAINTIFF SETTLEMENT AMOUNT, with PLAINTIFFS and PLAINTIFFS' COUNSEL.

    iv. NPS may disclose the TOTAL SETTLEMENT PAYMENT or any component thereof, including the PLAINTIFF SETTLEMENT AMOUNT, to the IRS and any other governmental entity to which the TOTAL SETTLEMENT PAYMENT or any component thereof must be reported, as well as any financial or tax advisors or specialists whom NPS may contact or retain, provided that they likewise agree to abide by the provisions of this Section.

    v. If the TOTAL SETTLEMENT PAYMENT or any component thereof, including the PLAINTIFF SETTLEMENT AMOUNT, but not including the LIHS SETTLEMENT AMOUNT, must be disclosed as required by law, or upon a lawfully issued subpoena or order of any

court of competent jurisdiction, or in response to any lawfully issued process or order of any court in connection with any administrative proceeding or government investigation, then the Party in receipt of such process or order must notify all other Parties in writing within seven (7) business days to review and investigate and, if necessary, challenge the process or order prior to any production mandated by such document.

7. **BREACH.**

(a) In any legal action solely and specifically for breach of the Parties' respective obligations under this Agreement, the Prevailing Party therein shall be entitled to have its costs and reasonable attorneys' fees paid by the losing Party.

(b) In any legal action solely and specifically for breach of the Parties' respective obligations under this Agreement, in addition to attorney's fees and costs as set forth in Paragraph 7(a), the prevailing Party therein shall be entitled to collect liquidated damages in the amount of $5,000 per occurrence from the losing Party.

8. **NOTICE.**

(a) Whenever this Agreement calls for one Party to provide notice to another Party, such notice shall be made by certified mail to the addresses indicated in this Paragraph 8, with a courtesy copy via e-mail to that Party's counsel. Any time periods calculated based on a Party's receipt of notice shall begin from that Party's receipt of the certified mail.

(b) Notice to NPS:

Sandra Liu
NPS Property Corp.
789 North Monroe Avenue
Lindenhurst, NY 11757

Ilene Jaroslaw
Elliott Kwok Levine & Jaroslaw LLP
565 5th Avenue
New York, NY 10017
ijaroslaw@ekljlaw.com

(c) Notice to LIHS:

Ian Wilder
Long Island Housing Services, Inc.

8

> 640 Johnson Ave., Suite 8
> Bohemia, NY 11716
> ian@lifairhousing.org
>
> Brian Corman
> Cohen Milstein Sellers & Toll PLLC
> 1100 New York Ave, Fifth Floor
> Washington, D.C. 20005

9. **MISCELLANEOUS TERMS.**

(a) This Agreement compromises disputed claims. Nothing contained in this Agreement shall be deemed an admission of liability, or of any violation of any applicable law, rule, statute, regulation, order, understanding, agreement, or contract of any kind, nor be treated as such at any time for any purpose. Neither this Agreement, nor any of its terms, nor any of the negotiations or proceedings connected with it shall be offered as evidence or received in evidence in any pending or future action or proceeding of any type whatsoever, provided, however, that the executed Agreement may be offered in order to enforce the terms thereof.

(b) This Agreement has been reviewed by the Parties and their respective attorneys and advisors. The Parties have had a full opportunity to negotiate the terms and conditions of this Agreement. Accordingly, the Parties expressly waive any common law or statutory rule of construction that ambiguities should be construed against the drafter of this Agreement. The Parties agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

(c) The use of headings in this Agreement is only for ease of reference. Headings shall have no legal effect and are not considered to be a part of or a term of this Agreement.

(d) This Agreement is made and entered into in the State of New York and shall in all respects be interpreted and enforced pursuant to the laws of the State of New York, without regard to or application of any New York conflict of laws rules.

(e) The Parties agree that the United States District Court for the Eastern District of New York shall have jurisdiction over the Parties and this Agreement in the event of a disagreement over the subject matter of this Agreement.

(f) This Agreement and its exhibits together constitute a single, integrated written contract expressing the entire agreement of the Parties. There are no other agreements, written or oral, express or implied, between Plaintiff and NPS with respect to the subject matter hereof. The Parties acknowledge and agree that they execute this Agreement voluntarily and for their own purposes, and that, aside from the representations contained herein, they have not relied upon representations,

DocuSign Envelope ID: 1652CC24-C156-4B10-B588-704E4ED39655

statements or promises made by any of the other Parties, or by their respective agents or attorneys.

(g) This Agreement cannot be modified orally or by implication. This Agreement may only be modified pursuant to the terms of a written instrument that is signed by all Parties, and that expresses the Parties' intent to modify this Agreement.

(h) The Parties to this Agreement agree, covenant, and represent that each and every provision of this Agreement shall be deemed to be contractual, and that they shall not be treated as mere recitals at any time or for any purpose. Therefore, the Parties further agree, covenant, and represent that each and every provision of this Agreement shall be considered severable. If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable for any reason, that provision, or part thereof, shall remain in force and effect to the extent allowed by law, and all of the remaining provisions of this Agreement shall remain in full force and effect and enforceable.

(i) This Agreement may be executed in counterparts, and if so executed and delivered, all of the counterparts together shall constitute one and the same Agreement. Electronic copies shall be deemed originals. Electronic signatures shall also be deemed originals. The Parties shall each maintain the original executed Agreement. In the event this Agreement is executed in counterparts, any counterpart transmitted electronically shall be binding as if it were an original.

(j) No Party to the Agreement has heretofore assigned, transferred or granted, or purported to assign, transfer or grant, any of the claims, demands, or cause or causes of action disposed of by the Agreement. This Agreement shall bind any assigns and successors of the Parties.

(k) The persons executing the Agreement each represent and warrant that he or she has the authority to enter into the Agreement, and to resolve the matters set forth in the Agreement, on behalf of the Party for whom he or she is executing the Agreement, and that no further approval is necessary in order for the Agreement to be binding on the Party for whom he or she is executing.

Having elected to execute this Agreement, to fulfill the promises and to receive the sums and benefits listed above, Plaintiff freely and knowingly, and after due consideration, enters into this Agreement and General Release intending to waive, settle, and release all claims it has or might have against NPS.

**IN WITNESS WHEREOF**, each of the undersigned Parties has entered into this Agreement on the dates shown below.

**DOREEN KERNOZEK**

By: _____

Print Name: Doreen Kernozek _____

Date: 11/10/2023 _____, 2023

**BRIAN CORMAN, ON BEHALF OF COHEN MILSTEIN SELLERS & TOLL PLLC**

By: _____

Print Name: Brian Corman _____

Date: 11/10/2023 _____, 2023

**THOMAS SILVERSTEIN, ON BEHALF OF LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**

By: _____

Print Name: Thomas Silverstein _____

Date: 11/10/2023 _____, 2023

11

**SANDRA LIU, ON BEHALF OF NPS HOLIDAY SQUARE, LLC; NORTHWOOD VILLAGE, INC.; BRIGHTWATERS GARDENS, INC.; LAKESIDE GARDEN APARTMENTS, LLC; SOUTH SHORE GARDENS, LLC; AND NPS PROPERTY CORP.**

By: _____
    2F5EE61AC2A5494...

Print Name: Sandra Liu

Date: 11/10/2023 , 2023

**ILENE JAROSLAW, ON BEHALF OF ELLIOTT KWOK LEVINE & JAROSLAW LLP**

By: _____
    A61BAD9677EF495...

Print Name: Ilene Jaroslaw

Date: 11/11/2023 , 2023

**ALISHA MCCARTHY, ON BEHALF OF HARRIS ST. LAURENT & WECHSLER LLP**

By: _____
    A060098AFEE644E...

Print Name: Alisha McCarthy

Date: 11/10/2023 , 2023

12